STATE OF OHIO EX REL. HEIDENREICH ET AL. v. ALLAN SMALLEY ET AL.

AFTER AGREEMENT TO POSTPONE ELECTION OF DIRECTORS, AN ELECTION PRIOR TO ADJOURNED HOUR IS NOT TO BE UPHELD.

Where at the meeting of the stockholders of a corporation for the election of officers, an agreement is made that the election be postponed until an hour agreed upon, or that takes place which justifies the holders of a majority of the stock there represented in believing that such postponement would be had, an election held by stockholders, parties to such arrangement, holding only a small amount of such stock, in the absence of the other parties, and prior to such time agreed upon, will not be upheld by the court.

*Quo Warranto.*

SMITH, J.

'On the evidence submitted we find:

First.—That those of the stockholders who represented what might be called the Heidenreich party, at the meeting called to be held at 2 p. m. on Feb. 27, 1893, for the election of directors for the Harrison Water Co., had reason to, and did believe, from what took place, after all of the stockholders then in the village of Harrison had assembled at the hour named, at the place where the election was to be held, that the organization of the meeting of the stockholders and the election of the directors were to be postponed until the arrival of the afternoon train from Cincinnati, due at Harrison about 3:50 p. m., on which it was understood that E. Lee Heidenreich, the president of the company, and who was the owner of about two-fifths of the stock of the company would arrive.

Second.—That in accordance with this understanding (the meeting having not organized for nearly one hour), Mr. S. Lee Heidenreich, the vice-president of the company, and Mr. Miller, two of the stockholders, (and who with Mr. Matler, the secretary of the company, acting with that party, owned or held proxies for more shares of stock than were had or controlled by the Kuhn party), left the room in which the stockholders were assembled, for a temporary purpose only, expecting to be present at the meeting when the train came in. But in their absence, about 3 o'clock, the meeting was organized, a chairman appointed, and within ten or fifteen minutes, a board of directors of the Kuhn party was elected, and the meeting adjourned. When the meeting was organized, Mr. Matler, the secretary, was asked by the chairman to call the two stockholders who had left the room, but he could not find them near at hand, and returned and reported the fact, but expressed the opinion that they would be in presently. The election, however, proceeded, Mr. Matler, the only person of his party present, declining to vote. When the train arrived, on time, the president, Mr. E. Lee Heidenreich came, and he and the vice-president, and Miller and Matler, went to the place of meeting, but found the other party gone, with the books of the company. They then proceeded to elect a different board of directors, and the question is, whether either of these boards, and, if so, which, was legally elected.

On the facts thus found, we think neither of the two boards was properly or legally elected. The evidence on the part of the defendants tended to show, that

while there was an understanding on the part of all the stockholders present, that
the organization of the meeting and the election of the directors should be delayed,,
that it was not agreed that it should be until the arrival of the train, but that it was
claimed by Mr. Haskell, for the Kuhn party, that it must be closed up in time to
allow them to return to the city by the 5:35 p. m. train.   This was probably the
case, but it tended, we think, to confirm the opinion of the other party, that it
would be postponed until the train arrived, as the meeting and election could then
have been had in time to allow Kuhn and his friends to return to the city.   Unless
this understanding was had, the conduct of Miller and S. Lee Heidenreich cannot
satisfactorily be accounted for, as they would not have been likely to absent them-
selves from a meeting for the election of directors as to which they were greatly
interested, when it was in their power to control the election, as matters then stood.
If the Kuhn party knew that the other party were relying on this agreement, good
faith required that it should be carried out.   If there was a misunderstanding in
regard to it, still we think in justice and fairness we should not allow the election
thus held to stand.   In the way in which it was done, the holders of a comparatively
small minority of the stock succeeded in electing a board against the wishes of
those present at a part of the meeting, holding or controlling a larger number of
shares, and who were temporarily absent, under what they understood to be an
agreement on the part of all concerned for the postponement of the election to a
certain hour.

        If the case came within the provisions of sections 6775-6, Rev. Stat., we would
order a new election; but it is questionable whether it does so.   But the persons
voted for at the first election will be ousted from any claim to the office, and unless
the parties agree to a new election, under the order of the court, it will be left with-
out further order; but in our judgment the directors in office prior to and on Feb-
ruary 27, 1893, are until their successors are elected and qualified, the legal direc-
tors of such company.

        Matthews & Cleveland, for relators.

        **C. W. Baker** and Haskill & Sutton, *contra.* .